**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ERICK CORREA,**
          **Plaintiff,**

**-vs-**                                              **Case No.  6:10-cv-1328-Orl-28DAB**

**GEORGIE TORRES and THE CITY OF**
**KISSIMMEE,**
          **Defendants.**
_____

## ORDER

In September 2006, Defendant Georgie Torres ("Torres"), a police detective for Defendant City of Kissimmee ("the City"), presented an arrest affidavit to a state court judge and obtained a warrant for the arrest of Plaintiff, Erick Correa ("Plaintiff"), for attempted felony murder. Plaintiff was later arrested and prosecuted in state court, but the charge against him was dismissed by the court before trial.

Following the dismissal of the criminal case against him, Plaintiff filed this lawsuit against Torres and the City, claiming that his arrest and prosecution were in violation of the U.S. Constitution and Florida law. The case is currently before the Court on the motions for summary judgment filed by the Defendants.[1] Having considered the parties' submissions and pertinent law, the Court concludes that the motions must be granted.

### I. Background

On July 2, 2006, a road-rage incident occurred in Kissimmee, Florida, during which

---

[1] The relevant filings are the Motion for Summary Judgment (Doc. 26) filed by the City, the Motion for Summary Judgment (Doc. 27) filed by Torres, and Plaintiff's Memorandum of Law in Opposition (Doc. 31) to both motions.

gunshots were fired from one vehicle to another. The driver of the second vehicle, Harvin Daley Blanco, was injured by the gunshots. Statements of witnesses, including Blanco, were taken. The shooter's vehicle was described by several witnesses as a gold-colored Ford Expedition; another described it as a brown Expedition with tinted glass. (See Witness Statements, Ex. A to Torres Aff. (Doc. 26-1)).

In his report regarding the incident, Kissimmee Police Department Investigator Hess recounted the witnesses' reports of a gold Ford Expedition. (Hess Report, Ex. D to Torres Aff.). Additionally, in that report Hess noted Blanco's statement that he had been shot at with a shotgun and the passenger's description of the shooter as a heavyset Hispanic male in his late 20s or early 30s with a crewcut hairstyle. (Id.).

On July 5, 2006, Torres was assigned as the lead investigator on the case. (Torres Aff. ¶ 7). Torres interviewed Blanco on July 6; Blanco was unable to give a detailed description of the shooter but stated he would be able to identify him if he saw him again. (Id. ¶ 10). After Central Florida Crimeline was advised of the incident, information regarding the shooting was broadcast in the media. (Id. ¶ 11). On July 8, 2006, Torres received a fax from Crimeline informing him of an anonymous call to Crimeline regarding a gold Ford Explorer with what appeared to be several bullet holes in it; the caller had provided a license plate number for the vehicle. (Id.). Inquiry to the Department of Motor Vehicles revealed that the gold Explorer was registered to Plaintiff. (Id.).

Torres compiled a photo array of pictures of six men, including Plaintiff, and showed it to Blanco at the police department on August 16, 2006. (Id. ¶ 12). According to Torres, Blanco "without hesitation circled the photograph" of Plaintiff and initialed it. (Id.). At the

-2-

time Blanco circled Plaintiff's photograph, he wrote a statement on an Identification Form stating "The number 6 [photo] looks like him. The only thing that changed is his haircut." (Witness Line-Up Identification Form, Doc. 27-9; Torres Dep., Doc. 31-3, at 16).[2] Torres also showed the array to Blanco's passenger, but the passenger was not able to recognize anyone. (Torres Aff. ¶ 13).

On August 21, 2006, Torres went to Plaintiff's residence in Fern Park, Florida, and observed a gold Ford Explorer in the driveway with the license plate number that had been reported by the anonymous tipster. (Id. ¶¶ 11, 14). Torres saw what appeared to be bullet holes in the vehicle, but on closer examination he realized the "holes" were actually stickers. (Id. ¶ 14). According to Torres, the Explorer had tinting on all windows except the driver and front passenger windows. (Id.). In his deposition, Plaintiff described his vehicle as a tan, four-door 1997 Ford Explorer with factory tint on the rear windows and two "[b]ullet hole stickers." (Pl. Dep., Doc. 27-2, at 37-41).

Torres made contact with Plaintiff at the residence and asked if he could search the Explorer. (Id. ¶ 15). Plaintiff declined this request. (Id.). Torres then had the Explorer impounded while he applied for a search warrant. (Id. ¶ 17). Torres obtained a search warrant on August 22, 2006, and the search was executed that same day. (Id. ¶ 18). A .22 caliber magnum handgun was found in the rear utility compartment of the Explorer. (Id.).

On September 6, 2006, Torres prepared an Arrest Affidavit for attempted felony murder. (Torres Aff. ¶ 19; Arrest Aff., Ex. H to Torres Aff.). In that four-page arrest affidavit,

---

[2]Blanco completed the form in Spanish. Torres translated it from Spanish to English during his deposition. Plaintiff has not taken issue with that translation.

Torres stated, inter alia, that the victim had described being shot at by another driver with a shotgun and told the initially-responding officer that the shooter's vehicle was "a gold colored Ford, possibly an Expedition," (Arrest Aff. at 1); that another witness had seen a "brown/gold colored Ford SUV," (id. at 2); that in talking to Torres after being released from the hospital the victim "was adamant that the suspect vehicle was a late 1990's model gold Ford, possibly an Expedition," (id.); that the victim had circled Plaintiff's photograph from a six-photo array and had identified him as the driver of the Ford and the shooter, (id. at 3); that the passenger was not able to select Plaintiff or anyone from the photographic array, (id.); that at Plaintiff's house Torres had realized that the supposed bullet holes were merely stickers simulating bullet holes, (id.); and that a .22 caliber handgun was found in Plaintiff's Explorer after the search warrant was obtained, (id. at 4). Based on Torres's arrest affidavit a state court judge issued a warrant for Plaintiff's arrest that same day. (Arrest Warrant, Ex. J to Defs.' Mots. Summ. J.). Pursuant to the warrant, Plaintiff was arrested shortly thereafter. However, the charge against him was dismissed by a state court judge before trial.

Plaintiff filed this lawsuit on September 3, 2010. (Compl., Doc. 1). Pursuant to 42 U.S.C. § 1983, in Counts I and II he asserts Fourth Amendment claims of false arrest and malicious prosecution, respectively, against Torres. Additionally, he alleges state law claims of false arrest and malicious prosecution (Counts III and IV) against Torres and also brings a state law false arrest claim (Count V) against the City. The Defendants' summary judgment motions are now ripe for ruling.

## II. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1263 (quoting Anderson, 477 U.S. at 251-52).

### III.  Discussion

### A.  Plaintiff's Federal Claims

In Counts I and II, Plaintiff brings claims of false arrest and malicious prosecution against Torres pursuant to 42 U.S.C. § 1983.  Torres contends that he is entitled to summary judgment on both claims based on the defense of qualified immunity.  "Qualified immunity protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "To receive qualified immunity, the officer must first show that he acted within his discretionary authority."  Id.

It is clear that Torres was acting within his discretionary authority during the events at issue in this case.  See, e.g., Horton v. Williams, 572 F. Supp. 2d 1292, 1298-99 (M.D. Ala. 2008) (noting that it was undisputed that investigator "was acting within his discretionary authority when he filed an affidavit in support of an arrest warrant that led to [the plaintiff's] arrest and prosecution").  Thus, "the burden . . . shifts to the plaintiff to show that qualified immunity should not apply."  Lewis, 561 F.3d at 1291.

To determine whether a government official enjoys the benefit of qualified immunity at the summary judgment stage, courts must assess whether the facts, viewed in the light most favorable to the plaintiffs, show a violation of a constitutional right and whether that right was clearly established at the time of the conduct at issue.  See Pearson v. Callahan, 555 U.S. 223, 232 (2009).  This two-part analysis need not be undertaken in any particular order.  Id. at 236.

Both of Plaintiff's § 1983 claims arise under the Fourth Amendment, and both involve

clearly established rights. First, "[t]here is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment." Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997). Additionally, "[t]his Circuit 'has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983.'" Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010) (quoting Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003)).

Both of these claims hinge on probable cause because the absence of probable cause is an element of each.[3] "Probable cause to arrest exists . . . when an arrest is 'objectively reasonable based on the totality of the circumstances.'" Coffin v. Brandau, 642 F.3d 999, 1006 (11th Cir. 2011) (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)). "'This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Id. at 1006-07 (quoting Lee, 284 F.3d at 1195). "Probable cause requires more than a mere suspicion, but not the level of convincing proof necessary to support a conviction." Id. at 1007.

Plaintiff was arrested after an arrest warrant had been issued by a state court judge.

---

[3] "To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." Grider, 618 F.3d at 1256. "As to the first prong, the constituent elements of the common law tort of malicious prosecution are: '(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.'" Id. (quoting Wood, 323 F.3d at 882).


Thus, this is not a case involving a warrantless arrest based on a determination of probable cause by a police officer out in the field. Nevertheless, an arrest pursuant to a judicially-issued warrant may, like a warrantless arrest, amount to a Fourth Amendment violation by a police officer in certain circumstances. In a case such as this one involving an arrest pursuant to a warrant, the matter of whether a constitutional violation has occurred turns on the contents of the affidavit that was presented in support of the arrest warrant. This is so because generally, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994).

The exception to this general rule is that "[a] magistrate's issuance of the warrant will not shield an officer when the warrant affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' nor will it shield an officer when the underlying affidavit includes deliberate and reckless misstatements and omissions." Miller v. Prince George's Cnty., 475 F.3d 621, 632 (4th Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 345 (1986)); accord Mannoia v. Farrow, 476 F.3d 453, 458 (7th Cir. 2007) (explaining that where defendant was arrested pursuant to a facially valid warrant, detective could violate defendant's rights "only if a reasonably well-trained officer in [detective's] position should have known that the information he provided in support of the warrant would have failed to establish probable cause and that he should not have applied for the warrant in the first place"). To succeed on a claim that a "seizure was unreasonable because it followed from a warrant affidavit that was deficient because it was dishonest," a plaintiff must

prove that the affiant "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit or omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" Miller, 475 F.3d at 627 (quoting Franks v. Delaware, 438 U.S. 154, 171 (1978), and United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990)) (internal citations omitted).

"With respect to omissions, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.'" Id. (alteration in original) (quoting Beauchamp v. City of Noblesville, 320 F.3d 733, 743 (7th Cir. 2003)). "Moreover, in order to violate the Constitution, the false statements or omissions must be 'material,' that is, 'necessary to the [neutral and disinterested magistrate's] finding of probable cause.'" Id. at 628 (alteration in original) (quoting Franks, 438 U.S. at 155-56); see also Madiwale, 117 F.3d at 1327 (noting that negligent or insignificant omissions will not invalidate a warrant and that "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause"); Stewart v. Donges, 915 F.2d 572, 583 (10th Cir. 1990) ("Franks does not extend to immaterial omissions."). "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.'" Miller, 475 F.3d at 628 (quoting Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)); accord Stewart, 915 F.2d at 582 n.13 ("Whether the omitted statement was material is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.").

-9-

Plaintiff contends that Torres made two material misrepresentations in the arrest affidavit and also omitted two material facts that would have negated probable cause if they had been included. Plaintiff asserts that Torres misleadingly stated (1) that the victim had qualifiedly reported that the shooter's car was "possibly" an Expedition and (2) that the victim had "positively identified" Plaintiff. Additionally, Plaintiff argues that Torres failed to include information (1) regarding the dark tint on the windows of the shooter's vehicle and the lack of such a tint on the windows of Plaintiff's vehicle and (2) that the shooter was described as wearing dark sunglasses and having a high crew cut, whereas Plaintiff was "nearly bald." However, even if the allegedly misrepresented and omitted information had been corrected or included in the affidavit as proposed by Plaintiff, probable cause would not have been negated.

First, if Torres had stated that the victim and several witnesses had reported that the shooter's car was an Expedition rather than that it "possibly" was an Expedition, this would not have negated probable cause given the similarity between an Expedition and an Explorer and the possibility that the witnesses were mistaken as to the exact model of the vehicle. The witness descriptions were not entirely consistent; one described the vehicle as brown, and as indicated in a police report submitted by Plaintiff there was another description from an anonymous witness of a "brown Blazer," (Doc. 31-1 at 2). Surely Plaintiff would not expect the police to rule out a similar vehicle merely because the model was not the precise one described by some witnesses. Second, Plaintiff argues that Torres's statement in the arrest affidavit that the victim "positively identified" Plaintiff from a photographic array is false. However, the Court cannot conclude that probable cause would be negated if the affidavit

-10-

had stated instead that the victim indicated that the photograph "looks like" Plaintiff with the qualification that "the only thing that changed is his haircut."

Relatedly, Plaintiff complains that Torres omitted that the shooter was described by a witness as having a "high crew cut" whereas Plaintiff is "nearly bald." As explained by Torres, however, hairstyle is easily changeable; a "high crew cut" could easily be changed into a close-shaved nearly bald style and vice versa. Moreover, Plaintiff's reliance on failure to mention sunglasses being worn by the shooter is misplaced, as is his emphasis on the dark window tint that was described as being on the shooter's vehicle. In his deposition, Plaintiff described his vehicle as a tan Explorer with "factory tint" on its back windows. (Pl. Dep. at 37-39). The Court does not regard a failure to mention "dark tint" versus "factory tint" as a material difference, especially considering, as noted by Torres, that window tint, like hairstyle, can be changed.

In sum, even when considered collectively, the differences between the arrest affidavit that was presented to the state court judge and a "corrected" affidavit that could be created by changing Plaintiff's asserted misrepresentations and including his asserted omissions would not materially alter the probable cause analysis. Both of Plaintiff's § 1983 claims fail.

B.  State Law Claims

Plaintiff also brings a state law claim of malicious prosecution against Torres and state law claims of false arrest against both Torres and the City. The elements of a malicious prosecution claim are essentially the same under Florida law as under § 1983; both require an absence of probable cause. See Chaney v. City of Orlando, 291 F. App'x 238, 243 (11th Cir. 2008) (citing Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994)).

Thus, for the same reason that Plaintiff's Fourth Amendment malicious prosecution claim fails, his state law malicious prosecution claim fails as well.  The Defendants argue that Plaintiff's state law false arrest claim is not viable as a matter of law where the arrest occurs pursuant to a warrant.  Plaintiff insists that it is, but even under Plaintiff's view of the law the presence of probable cause renders the claim unviable.  Accordingly, Defendants are entitled to summary judgment on all of Plaintiff's state law claims.

### IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Motion for Summary Judgment (Doc. 26) filed by the Defendant City of Kissimmee is **GRANTED**, the Motion for Summary Judgment (Doc. 27) filed by Defendant Georgie Torres is **GRANTED**, and all other pending motions are **DENIED as moot**.

2.  The Clerk is directed to enter a judgment providing that Plaintiff shall take nothing on any of his claims against the Defendants.  Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida this 11th day of April, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record